# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| MICHELLE JEX, Individually, And On Behalf of Her Deceased Son, CORY JEX,<br><br>        Plaintiff,<br><br>    v.<br><br>UTAH COUNTY et al.,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:12-CV-246-TS<br><br>District Judge Ted Stewart |

Plaintiff, Michelle Jex, individually and on behalf of her deceased son Cory Jex, brought this suit under 42 U.S.C. § 1983. *See* 42 U.S.C.S. § 1983 (2013). Before the court are Defendant Thomas Patterson's Motion to Dismiss (Doc. No. 9) and Defendant Kirk Moncrief's Motion to Dismiss (Doc. No. 17).

## I. Introduction

Plaintiff's son, Cory Jex, committed suicide in the Utah County Jail while being held on a probation violation. Defendant Thomas Patterson was the Executive Director of the Utah Department of Corrections (UDC) at the time of the incident, while Defendant Kirk Moncrief was the Regional Director of UDC's Adult Probation and Parole (AP&P) Region Four headquartered in Provo, Utah. Plaintiff's Complaint alleges that Defendants Patterson and Moncrief (Defendants) violated Cory's constitutional rights by failing to take appropriate measures to prevent suicides of probationers held in county jails. Defendants move to dismiss

asserting that Plaintiff has not alleged facts showing an affirmative link between their conduct and Cory's death.  Defendants further assert that Plaintiff fails to allege facts showing that they were deliberately indifferent to a serious risk of harm to Cory.

## II.  Legal Standard

A motion to dismiss under Rule 12(b)(6) requires the court to decide whether the factual allegations made in the complaint, if true, would entitle the plaintiff to some sort of legal remedy. To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)).  "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Or, in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Id*. Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party.  *Ridge at Red*

*Hawk, L.L.C.*, 493 F.3d at 1177.  However, legal conclusions, deductions, and opinions couched

as facts are not presumed to be true, and the court must disregard conclusory allegations without

supporting factual averments.  *See, e.g., Erikson v. Pawnee County Bd. of County Comm.*, 263

F.3d 1151, 1154-55 (10th Cir. 2001).  When a civil rights complaint contains only "bare

assertions" involving "nothing more than a 'formulaic recitation of the elements' of a

constitutional . . . claim," the court considers those assertions conclusory and does not afford

them the presumption of truth.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting

*Twombly*, 550 U.S. at 554-55).

### III.  Plaintiff's Allegations

Plaintiff's Complaint alleges in relevant part:[1]

      1.       On or about March 9, 2011, Agent Reyna Cameron, a probation

officer of the Utah Office of Adult Probation and Parole, contacted Plaintiff and

requested that Plaintiff aid her in locating Plaintiffs son, Cory Jex.

      2.       Agent Cameron indicated to Plaintiff that she was aware of Cory's

history of anxiety, depression and heroin abuse, and that Agent Cameron needed

to arrest Cory "for his own safety."

      3.       Agent Cameron was made aware of Cory's history of anxiety,

depression, drug abuse, and multiple suicide attempts from a Presentence Report

Questionnaire Cory filled out on or about December 17, 2010, at the Provo offices

---

[1]  These allegations are copied directly from the Complaint with original numbering.

3

of Adult Probation and Parole.  In said Questionnaire, Cory disclosed that he had

been suffering from depression since the age of 13, was being treated for said

depression, and wrote, "I've tried to hang myself multiple times, and put a gun in

my mouth but couldn't pull the trigger."

      4.      As Cory's probation officer, Agent Cameron was tracking Cory's

random drug screening.  Cory had missed a drug screening on February 28, 2011.

Cory tested positive for opiates on March 3, 2011, and on March 7, 2011.  After

missing a drug screening on March 8, 2011, Agent Cameron telephoned Cory

wherein he admitted to using heroin on March 3 and March 6, 2011.

      5.      On March 9, 2011, Agent Cameron arrested Cory at his home in

Springville, Utah, and booked him into the Utah County Jail on a 72 hour hold for

the drug and probation violations.

      6.      Although Agent Cameron knew of Cory's history of anxiety,

depression, multiple suicide attempts, and recent heroin abuse, she indicated none

of these issues on his "Arresting/Detaining Officer's Assessment Form" she filled

out at the jail.  Instead Agent Cameron stated Cory's demeanor was "upbeat" and

that he was not under the influence of drugs.

      7.      While being booked in to the Utah County Jail on March 9, 2011,

Cory was assessed by Daniel Goodwin, a registered nurse and Utah County

employee.  Goodwin completed a "Suicide Prevention and 14-day Evaluation" of

Cory.

4

8.     In said evaluation, Cory disclosed to Goodwin that he was taking Lexapro for depression and was using three balloons of heroin per day.  Cory further disclosed that he had a history of depression was anticipating going through opiate withdrawals while incarcerated.  Goodwin asked Cory if a parent of family member had attempted suicide, to which Cory answered "yes."

9.     Available to Goodwin at the time of his March 9, 2011, evaluation was Cory's previous evaluation conducted by Goodwin's coworker, R.N. Don Walker.  Walker conducted this same "Suicide Prevention and 14-day Evaluation" on Cory August 13, 2010, when Cory was first booked into jail.  In his evaluation, Walker asked Cory if he had attempted suicide, to which Cory disclosed that he had attempted to hang himself as recently as five months prior to August 2010.  Based on his evaluation, Walker had placed Cory on suicide watch.

10.     Goodwin, however, did not place Cory on suicide watch despite Cory's disclosures March 9, 2011.

11.     On March 10, 2011, at approximately 12:27 p.m., while in the custody and care of the Utah County Jail, Cory hanged himself in the shower of his cell.  He was taken off life support on March 13, 201l.

. . .

18.     The defendants Reyna Cameron, Kirk Moncrief, and Thomas Patterson, upon information and belief, at all times mentioned herein, were employees of Utah Department of Corrections, acting as individuals and under the

color of and pursuant to Utah State Law.

. . .

    25.    Plaintiff alleges that Director Thomas Patterson, of the Utah
Department of Corrections, Regional Director Kirk Moncrief, of Adult Probation
and Parole, and Sheriff Jim Tracy, of the Utah County Sheriffs Office, acting in
their respective individual capacity and under color of law were each aware of the
suicide practices of inmates and have each turned a blind eye to such practices,
not taking precautions to adequately address suicides, thereby condoning,
facilitating or approving of said conduct, and thus depriving Cory of his federal
civil rights.

### IV.  Sufficiency of Allegations

Defendants assert the Complaint fails to state a plausible claim for relief against them
because, rather than alleging facts affirmatively linking each of them to Cory's death, it seeks to
hold them liable based solely on their supervisory positions.

### A.  Supervisory Liability

It is well settled in the Tenth Circuit that "under § 1983, government officials are not
vicariously liable for the misconduct of their subordinates." *Serna v. Colorado Dep't of Corr.*,
455 F.3d 1146, 1151 (10th Cir. 2006).  Instead, supervisors may only be held liable under
Section 1983 "for their own culpable involvement in the violation of a person's constitutional
rights."  *Id.*  Thus, a plaintiff must allege facts showing an "affirmative link" between the actions
of each defendant and the alleged constitutional violation.  *Anaya v. Crossroads Managed Care*

*Sys. Inc.*, 973 F. Supp.1228, 1248 (D. Colo. 1997), rev'd on other grounds, 195 F.3d 584 (10th

Cir. 1999).  However, the "requisite causal connection is satisfied if the defendant set in motion a

series of events that the defendant knew or reasonably should have known would cause others to

deprive the plaintiff of her constitutional rights."  *Snell v. Tunnell,* 920 F.2d 673, 700 (10th Cir.

1990)

       Section 1983 liability cannot be predicated on the doctrine of *respondeat superior*.

*Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691–692 (1978).  Thus, to state

a claim against a supervisor, a plaintiff must allege sufficient facts to support a finding that the

supervisor "personally participated" in the unconstitutional act.  *Bennett v. Passic*, 545 F.2d

1260, 1263-64 (10th Cir. 1976).  Simply alleging that a defendant was a supervisor fails to state a

claim because "supervisor status by itself is insufficient to support liability [under Section

1983]."  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Instead, a plaintiff must

allege "an intentional, conscious, and deliberate act by the defendant participating in, or

knowingly acquiescing in, the unconstitutional behavior."  *Woodward v. City of Worland,* 977

F.2d 1392, 1399 & n. 11 (10th Cir. 1992).

       A plaintiff may state a Section 1983 claim against a defendant-supervisor by plausibly

pleading that: "( 1) the defendant promulgated, created, implemented or possessed responsibility

for the continued operation of a policy that ( 2) caused the complained of constitutional harm,

and ( 3) acted with the state of mind required to establish the alleged constitutional deprivation."

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).  However, when an official is sued

under Section 1983 "for conduct 'arising from his or her superintendent responsibilities,' the

plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Id.* at 1098.

### B.  Defendant Patterson

Plaintiff's Complaint does not allege any facts showing that Patterson had any personal knowledge of, or interaction with, Cory Jex, or that he knew there was a substantial risk that Cory might attempt suicide.  Nor does Plaintiff allege that Patterson was directly responsible for training or supervising personnel at the Utah County Jail.  Instead, Plaintiff's claim against Defendant Patterson is premised entirely upon the allegation that Patterson was generally "aware of the suicide practices of inmates and . . . turned a blind eye to such practices [by] not taking precautions to adequately address suicides . . . ."  (Compl. ¶ 25.)

Plaintiff's Complaint does not allege sufficient facts to show a plausible connection between Patterson's conduct as Executive Director of UDC and Cory's suicide at the Utah County Jail.  While not clearly stated in the Complaint, the only link the Court can possibly discern between the two is that Patterson had overall responsibility for AP&P, which employed Agent Cameron, who, in turn, was directly involved with placing Cory in the custody of the Utah County Jail.  Such a tenuous connection, however, does not show personal participation or an affirmative link to Defendant Patterson.  Nor does Plaintiff identify any policy that Patterson "promulgated, created, implemented or possessed responsibility for" which may have led directly or indirectly to Cory's death.  Although Plaintiff alleges that Patterson failed to "tak[e] precautions to adequately address suicides" (presumably of probationers under AP&P

8

supervision), there are no facts showing that Patterson had any knowledge of such suicides or the need to implement or revise policies to prevent them.  Nor is it plausible to infer that Patterson had such knowledge based solely on his position as Executive Director of UDC.  Moreover, even assuming that Patterson was aware of such deficiencies, Plaintiff has not alleged facts showing that Patterson turned a blind eye or showed deliberate indifference to the problem by refusing to implement new policies or training practices that might have ameliorated the problem.

Plaintiff asserts that the Complaint is sufficient because it "alleges systematic indifference" by employees of both the Utah County Jail and AP&P, and that Defendant Patterson "bears the responsibility to implement policies, procedures, practices and training of officers and agents of [AP&P]."  (Mem. Opp'n (Doc. No. 14) at 4.)  While these allegations may be true, Plaintiff has not alleged any facts linking Patterson's purported policy-making or training failures  directly to Cory's death.  Moreover, Plaintiff's assertion that the Complaint is sufficient because "discovery will invariably flush out the strengths and/or weaknesses of the allegations against Patterson," (id.),  misapprehends the appropriate role of discovery, which is not to turn up facts necessary to state a claim, but to develop evidence to support the facts already alleged in the Complaint.  Simply put, Plaintiff has not alleged such facts in her Complaint and she is not entitled to conduct discovery in order to come up with them.

Thus, the Court concludes that Plaintiff's Complaint does not allege a plausible claim for relief against Defendant Patterson under Section 1983.

### C.  Defendant Moncrief

The Complaint also fails to allege facts directly linking Defendant Moncrief to any civil

rights violation.  Although Moncrief's link to Plaintiff's claims is slightly less attenuated than Patterson's (assuming Moncrief's direct supervision over Agent Cameron), the Complaint does not allege any facts showing that Moncrief "personally participated" or "knowingly acquiesced in" any unconstitutional behavior.  *Woodward,* 977 F.2d at 1399.  Even assuming that Agent Cameron showed deliberate indifference by booking Cory into the Utah County Jail, Plaintiff has not alleged any facts to support the conclusion that Moncrief's failure to train or supervise Cameron led to this decision.  In fact, Plaintiff does not allege any specific facts regarding Moncrief's training or supervisory actions, much less that Moncrief acted with the requisite mental state of deliberate indifference.

In sum, the factual allegations in Plaintiff's Complaint, even when viewed as true, are insufficient to support the conclusion that Defendants' personal involvement caused the alleged constitutional violations.  Or, that Defendants deliberately and intentionally failed to implement policies and train AP&P officers in order to violate Cory's rights.  Thus, Plaintiff's Complaint does not state a plausible claim against Defendants under Section 1983 based on their own participation or on their failure to train or supervise others.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendant Patterson's Motion to Dismiss (Doc. No. 9) is **GRANTED**; and,

(2) Defendant Moncrief's Motion to Dismiss (Doc. No. 17) is **GRANTED**.

DATED this 4th day of March, 2013.

BY THE COURT:

_____

TED STEWART, Chief Judge
United States District Court

11